# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 03CR3061-L |
| Plaintiff, | |
| vs. | **ORDER** |
| EMILIO SANCHEZ SERRANO (2), | |
| Defendant. | |

Defendant has filed a motion to dismiss the charges against him, alleging his right to a speedy trial has been violated. An evidentiary hearing regarding Defendant's motion was held on April 28, 2011. At the conclusion of the hearing, the Court took the matter under submission. Having fully considered the submissions of the parties and the evidence presented at the hearing, the Court will grant Defendant's motion.

**I.   Background**

On November 7, 2003, Defendant was indicted, along with others, on charges that he conspired to distribute heroin in violation of 21 U.S.C. § 846 and 841(a)(1) and that he distributed heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A federal arrest warrant was issued for Defendant and a search warrant was issued for his residence at 1144 44th Avenue, San Diego, California. According to the testimony of Agent Chris Felan, law enforcement agents served the search warrant at Defendant's residence on November 13, 2003.

Defendant was not present at the time, however his wife was. The agents searched the house and seized items including an I-91 Card in Defendant's name and $8,000 in cash. The agents informed Defendant's wife that they were looking for him and left a card with their contact information. Defendant never contacted the agents.

Subsequently, the United States Marshals Service (USMS) was notified that Defendant was a wanted fugitive, and on an unknown date, the national criminal databases were updated to reflect that Defendant had an active federal warrant for his arrest.

Agent David Sparks testified that on May 31, 2005, he conducted a law enforcement database check for the first time to determine if there had been any contact with Defendant. Agent Sparks conducted a total of nine database checks between May 2005 and October 2009. During one of the checks, in March 2006, he discovered that someone had renewed Defendant's California Driver's License and had registered a vehicle under his name, and listed an address in San Diego. Agent Sparks notified the USMS of this information. The USMS checked the address, but did not locate Defendant. The circumstances of the attempted contact are unknown.

According to Defendant's motion, he was aware that federal agents were looking for him in November of 2003, however he decided against contacting them. He contends that he did not know he had been indicted or charged. Defendant states he remained living at the residence at 1144 44th Avenue until December of 2004. Thereafter, Defendant and his family moved to several different residences in San Diego. Around 2008, Defendant and his family moved to Winton, California. Defendant states that from November 2003 until his arrest in 2010, he lived openly in California, and at least four of those years he was in San Diego. He notes that during that period, he worked, filed income taxes, renewed his driver's license, registered vehicles, and registered and paid utilities under his own name. He also filed a relative visa petition for his wife and reported a change of address to the INS in connection with the petition.

Ultimately, Defendant was arrested on the warrant on September 2, 2010 when he appeared for a scheduled interview on his application for Section 8 housing.

///

///

**II.     Analysis**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. A defendant's Sixth Amendment right to a speedy trial attaches when he is indicted. *United States v. Mills*, 810 F.2d 907, 909 (9th Cir. 1987). To determine whether post-indictment delay violates a defendant's speedy trial rights under the Sixth Amendment, the Court weighs the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Doggett v. United States*, 505 U.S. 647 (1992).

### 1.     *The Length of the Delay*

The length of the delay is a threshold issue. *Barker,* 407 U.S. at 530. Delay is measured from "the time of the indictment to the time of trial." *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Generally, delays approaching one year are considered presumptively prejudicial. *Id.; United States v. Gregory*, 322 F.3d 1157, 1161-62 (9th Cir. 2003). Here, Defendant was first indicted on November 7, 2003. He was not arrested until September 2, 2010. The Court finds the delay of nearly seven years creates a presumption of prejudice and justifies further inquiry.

### 2.     *The Reason for the Delay*

Once an indictment has been returned against the accused, "the government has a constitutional duty to make a diligent, good faith effort to locate, apprehend and bring him to trial." *United States v. Packer*, 857 F.Supp. 726, 729 (C.D. Cal. 1994); *Smith v. Hooey*, 393 U.S. 374 (1969). The Court looks to the reason for the post-indictment delay to determine if the government has complied with this duty. "The reason for the delay is the focal inquiry." *Sears*, 877 F.2d at 739. The less at fault the government is for the delay, the more likely the delay was justified. *See Barker*, 407 U.S. at 531. "On the other hand, if the government is negligent in pursuing the defendant, prejudice is presumed." *United States v. Mendoza*, 530 F.3d 758, 763

(9th Cir. 2008).

In *United States v. Sandoval*, 990 F.2d 481, 483 (9th Cir. 1993), the Ninth Circuit explained that "when the defendant seeks to avoid detection by American authorities and any post indictment delay can be attributed to him, he waives the right to a speedy trial." The Government correctly notes that "[i]f a defendant attempts to avoid detection, the government is not required to 'make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension.'" *Mendoza*, 530 F.3d at 763. "However, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit." *Id.*

Here, it appears Defendant was not attempting to keep his whereabouts unknown. Defendant did not immediately move away from the address where the search warrant was executed. Rather, he continued to live there for a significant period of time. And he filed federal tax returns, renewed his drivers license, registered a vehicle, and paid public utilities, all under his own name. He even sent a letter to the INS to update his address in connection with a petition he filed on behalf of his wife. Moreover, the Court is not persuaded by the Government's argument that the fact Defendant moved to different residences over a seven year period indicates a deliberate attempt to avoid apprehension. Nor is the Court persuaded by the Government's assertion that Defendant was aware of the indictment, or should have been aware of it, because the agents seized items from his house when the executed the search warrant. It does not appear that the agents actually informed Defendant or his wife of the indictment, but rather only left their contact information with his wife. The Court finds it noteworthy that the Indictment was not unsealed until the day after the search warrant was executed.[1] *See Mendoza*, 530 F.3d at 763 (stating the government is required to notify a defendant of the indictment or otherwise actively attempt to bring him to trial).

This case is distinguishable from *United States v. Corona-Verbera*, 509 F.3d 1105 (9th Cir. 2007), where the defendant had absconded to Mexico. In *Corona-Verbera*, the Court held

---

[1] *See* Docket Entry No. 1.

there was no speedy trial violation despite a nearly 8-year delay. The Court found the Government exercised due diligence by entering the defendant's name into law enforcement databases and contacting Unsolved Mysteries and America's Most Wanted. *Id.* at 115-16. Key to the Court's holding was the fact that the defendant had fled to Mexico and it would have been futile for authorities to seek extradition. *Id.*

Here, in contrast, Defendant remained living openly in California, and spent a significant portion of the delay in San Diego. While periodic database checks may suffice in a case like *Corona Verbera*, where the defendant fled to Mexico and it was highly unlikely he could be extradited, the Court finds they fall short in this case. From the evidence presented, it appears the Government did nothing to locate Defendant for the first two years after attempting to execute the warrant. Then in 2005, for the first time, it began conducting periodic database checks. Although the USMS followed up on one lead in 2006, the Government did not present any evidence of what happened during the attempted contact. For instance, it is unknown if Defendant was simply not home at the time the agents went to the residence, if Defendant did not live there, or if Defendant took some action to evade the agents.

The Court finds that, based on the evidence presented in this case, the Government failed to satisfy its obligation to locate Defendant and bring him to trial. Therefore, the Court finds this factor weighs in favor of the defense.

### 3. *Defendant's Assertion of His Right to a Speedy Trial*

There is no evidence that Defendant knew of the charges against him until his arrest. However, Defendant did not formally assert his speedy trial right until approximately 5 ½ months after his initial appearance, and after he had requested three continuances. Therefore, the Court finds this is a neutral factor in this case. *See Corona-Verbera*, 509 F.3d at 1116 ("Because [defendant] asserted his speedy trial right only after requesting numerous continuances, we find this factor weighs neither in favor of dismissal nor in favor of the government.").

### 4. *Prejudice to the Defendant*

The Supreme Court has identified three interests the speedy trial right was designed to protect and which may be prejudiced by an excessive delay. They are: (1) preventing oppressive

pretrial incarceration; (2) minimizing anxiety and concern; and (3) limiting the possibility that delay will impair the defense. *Barker*, 407 U.S. 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Defendant does not argue that he has suffered prejudice relating to the first or second interests. Therefore, the only interest implicated in this case is the possibility that the delay will impair the defense. Defendant contends that his defense has been impaired because the evidence has become stale and the passage of time has made it difficult to locate exculpatory witnesses and evidence. These are a valid concerns. In *Mendoza*, the Ninth Circuit explained that the third form of prejudice "is not only the most important, it is also the most difficult to prove because 'time's erosion of exculpatory evidence and testimony 'can rarely be shown.''" *Mendoza*, 530 F.3d at 764. The Court concluded that because of these concerns "no showing of prejudice is required when the delay is great and attributable to the government. Instead we presume prejudice." *Id.*

The Government counters that Defendant must show specific prejudice and cannot rely on a presumption of prejudice. However, because the Court has found that the Government was negligent in pursing him, Defendant is not required to show specific prejudice. *See Mendoza*, 530 F.3d at 764 (holding that where "the government did not exercise due diligence," there is "a strong presumption that [defendant] suffered prejudice")*; United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992) (holding the defendant was not required to show actual prejudice where the delay was caused by the government's negligence).

Here, the Government has not rebutted the presumption that Defendant suffered prejudice as a result of the delay. Therefore, the Court finds this factor weighs in favor of the defense.

/ / /

/ / /

/ / /

/ / /

/ / /

**III.     Conclusion**

After balancing the *Barker* factors, the Court finds dismissal is warranted. Accordingly, Defendant's motion to dismiss for violation of his Sixth Amendment right to a speedy trial is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  May 23, 2011

_____
M. James Lorenz
United States District Court Judge